UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| Jacoby Kindred,<br><br>               Petitioner,<br><br>v.<br><br>Jeff Titus, Warden – MCF Rush City,<br><br>               Respondent. | Case No. 17-cv-0620 (SRN/HB)<br><br><br>**REPORT AND RECOMMENDATION** |

Jacoby Kindred, 7600 525th Street, Rush City, MN 55069, *pro se*

Matthew Frank, Minnesota Attorney General's Office, 445 Minnesota Street, Suite 1800, Saint Paul, MN 55101; James B. Early, 3 Red Fox Road, St. Paul, MN 55127; and Peter R. Marker, Ramsey County Attorney's Office, 345 Wabasha Street N., Suite 120, St. Paul, MN 55102; for Respondent Jeff Titus

HILDY BOWBEER, United States Magistrate Judge

      Jacoby Kindred filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 challenging a judgment entered against him in Minnesota state court. (Pet. Writ Habeas Corpus [Doc. No. 1].) Respondent Jeff Titus moved to dismiss the petition, asserting that Kindred's claims are procedurally defaulted because they were not fairly presented to each level of the state courts and no state court remedy remains. (Resp't's Mem. Supp. Mot. Dismiss [Doc. No. 7].) For the reasons set forth below, the Court recommends that the motion to dismiss be granted and the petition for a writ of habeas corpus be denied.

1

**I.    Background**

On December 11, 2013, Kindred was charged with two counts of first-degree criminal sexual conduct under Minn. Stat. § 609.342, subd. 1(h)(iii). *State v. Kindred*, No. A14-2212, 2016 WL 22239, at *2 (Minn. Ct. App. Jan. 4, 2016). The charges alleged that Kindred engaged in numerous sexual acts with the daughters of his son's girlfriend. (Resp't's App. to Mem. Supp. at 9 [Doc. No. 8-1].) Both girls were minors. (*Id.*) From a young age, the victims regularly spent time with Kindred; he would babysit them while their mother was working and they occasionally stayed overnight at his house. (*Id.*) Further, the victims referred to Kindred as "Grandpa" even though he was not related to the children by blood, marriage or adoption. (*Id.*) At trial, the victims testified regarding the various sexual acts that Kindred had subjected them to over the course of the past decade as well as the circumstances under which the acts took place. (*Id.* at 9–11.) The State also played a video for the jurors of an interview of one of the victims conducted by a nurse at the Midwest Children's Resource Center describing in detail the sexual conduct that took place with Kindred. (*Id.* at 11.) Near the end of the trial and at the jurors' request, the court allowed the State to replay the video of the victim interview. (*Id.*) Based on victim testimony, the video of the interview, and other evidence presented at trial, the Ramsey County jury convicted Kindred of both counts first-degree criminal sexual conduct. (*Id.* at 5.) The court later sentenced him to a 24-year prison term which he is currently serving at the Rush City Correction Facility where Jeff Titus serves as warden. (*Id.* at 4; *see also* Resp't's Mem. Supp. Mot. Dismiss [Doc. No. 7].)

Kindred directly appealed and argued, *inter alia,* that the State failed to prove beyond a reasonable doubt that he had a "significant relationship" to the victims, *i.e.* that he was related to or resided in the same dwelling as them. *State v. Kindred*, No. A14-2212, 2016 WL 22239, at *1 (Minn. Ct. App. Jan. 4, 2016). A sexual assailant who victimizes a child with whom he has a "significant relationship" in the manner described by the statute is guilty of the most serious category of sex crime and subject to the steepest penalties. Minn. Stat. § 609.342, subd. 1(h)(iii).[1] A "significant relationship" exists if the accused is related to or "jointly resides intermittently or regularly in the same dwelling" as the victimized child." Minn. Stat. § 609.341, subd. 15.[2] Arguing before the Minnesota Court of Appeals, Kindred asserted the State was unable to show he had a significant relationship to the victims because it failed to prove beyond a reasonable

---

[1] Minn. Stat. § 609.342, subd. 1(h)(iii): Criminal Sexual Conduct in the First Degree: Significant Relationship to the Minor—A person who engages in sexual penetration with another person, or in sexual contact with a person under 13 years of age as defined in section 609.341, subdivision 11, paragraph (c), is guilty of criminal sexual conduct in the first degree if any of the following circumstances exists:
  …
  (h) the actor has a significant relationship to the complainant, the complainant was under 16 years of age at the time of the sexual penetration, and:
    …
    (iii) the sexual abuse involved multiple acts committed over an extended period of time.

[2] Minn. Stat. § 609.341, subd. 15: Significant relationship—"Significant relationship" means a situation in which the actor is: (1) the complainant's parent, stepparent, or guardian; (2) any of the following persons related to the complainant by blood, marriage, or adoption: brother, sister, stepbrother, stepsister, first cousin, aunt, uncle, nephew, niece, grandparent, great-grandparent, great-uncle, great-aunt; or (3) an adult who jointly resides intermittently or regularly in the same dwelling as the complainant and who is not the complainant's spouse.

doubt that he resided with them. *Kindred*, 2016 WL 22239, at *2. In particular, Kindred asserted the State was only able to show the victims "sometimes" stayed over at his house which, Kindred argued, was insufficient to show that the victims "reside[d] intermittently or regularly in the same dwelling" as required by the statute. *Id.* The Minnesota Court of Appeals disagreed and upheld the conviction. In particular, the Minnesota Court of Appeals noted that state court precedent treats discontinuous overnight stays as sufficient to meet the "resided with" requirement for a finding of a significant relationship. *Id.* at *3–6. Kindred appealed to the Minnesota Supreme Court, and the Court declined to review on March 15, 2016. (Resp't's Mem. Supp. Mot. Dismiss at 7 [Doc. No. 7].)

By this petition, Kindred seeks federal habeas corpus relief pursuant to 28 U.S.C. § 2254. (Pet. at 1.) Under that provision of the federal habeas statutes, the district court "shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254. Kindred asserts four grounds for relief.[3] In Grounds One and Two, Kindred argues that his constitutional right to due process was violated because the State failed to show he had a significant relationship with the victims, which is an essential element for

---

[3] In his habeas petition, Kindred argues he is entitled to relief under 28 U.S.C. § 2254 based on bare assertions of error at the trial court level and, as a *pro se* litigant, is understandably unable to assert a legal basis for his claims. "A document filed *pro se* is 'to be liberally construed' and 'a pro se complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers.'" *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (citing *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)). Here, the Court construes Kindred's claims liberally and, based on their substance, determines they are federal constitutional claims under the Due Process Clause of the Fourteenth Amendment.

conviction under Minn. Stat. § 609.342, subd. 2. (Pet. at 6–8.) In Ground Three, Kindred argues the trial court violated his right to due process when it replayed the video of a victim's interview with the Midwest Children's Resource Center. (Pet. at 9–10.) In Ground Four, Kindred asserts he was denied due process by the inadequate medical examinations of the victims. (Pet. at 11.) Lastly, in Ground Five, Kindred asserts his conviction was improper due to various evidentiary shortcomings which, if properly addressed, would have tended to prove his innocence. (Pet. at 11[4].)

## II.     Discussion

### A.)     Legal Standards

A writ of habeas corpus enables a prisoner to appear before the court to challenge the legality of his confinement and, if successful, obtain his release. *Preiser v. Rodriguez*, 411 U.S. 475, 485 (1973) ("[T]he writ of habeas corpus [is] a remedy . . . from any confinement contrary to the Constitution or fundamental law."). The right to petition for habeas relief is a foundational legal principal in the American system, *see* U.S. Const. art. 1 § 9, and has been recognized as "an integral part of our common-law heritage." *Preiser*, 411 U.S. at 485. However, the right is not absolute and has been shaped by common law doctrine and federal statutes. *See* 28 U.S.C. §§ 2241-2255; *see also, e.g.,* Antiterrorism and Effective Death Penalty Act, Pub. L. No. 104-132, 110 Stat. 1214 (1996).

One limitation on the right to habeas review is the exhaustion principle. 28 U.S.C.

---

[4] The evidentiary shortcomings raised in Count Five were attached to the petition but not included in the page count. The attached sheet containing Count Five can be seen at page number 11 of 16 in the ECF filing [Doc. No. 1].

§ 2554(b).  Federal courts may entertain a habeas petition brought by a state prisoner only if the prisoner has exhausted all available state court remedies relating to those claims. *O'Sullivan v. Boerckel*, 526 U.S. 838, 842 (1999).  A claim is exhausted when the petitioner "has afforded the highest state court a fair opportunity to rule on the factual and theoretical substance of his claim."  *Ashker v. Leapley*, 5 F.3d 1178, 1179 (8th Cir. 1993).  The highest state court is afforded that opportunity only when the petitioner invokes "a specific federal constitutional right, a particular constitutional provision, a federal constitutional case, or a state case raising a pertinent federal constitutional issue in a claim before the state courts."  *McCall v. Benson*, 114 F.3d 754, 757 (8th Cir. 1997) (quotation and quotation marks omitted).  If unexhausted claims are presented in a habeas petition, and state court remedies remain available with respect to those claims, the federal court may either dismiss the claims without prejudice or stay the proceedings to allow for the petitioner to attempt to obtain the state court remedies.  *Armstrong v. Iowa*, 418 F.3d 924, 926 (8th Cir. 2005).

Another limitation on the right to habeas review is the procedural default principle.  In general, federal courts may not hear habeas petitions where the claims have been procedurally defaulted.  *Coleman v. Thompson,* 501 U.S. 722, 750 (1991).  A claim is procedurally defaulted when a habeas petitioner failed to raise it before the state courts, and the state courts can no longer review it at that point because an "independent and adequate state procedural rule" precludes further litigation of the claim.  *Coleman v. Thompson,* 501 U.S. 722, 749-50 (1991).  In other words, procedural default occurs when a state petitioner raises an unexhausted claim in his federal habeas petition but, due to a

6

procedural rule, has missed the window to go back and exhaust the claim. In that situation, the Court then must typically dismiss the defaulted claim with prejudice. *Armstrong*, 418 F.3d at 927 (indicating that procedural default "prevents federal habeas corpus review of the defaulted claim").

If a claim is procedurally defaulted on federal habeas review, a federal court may hear the petition only under two limited circumstances: (1) if the petitioner can demonstrate cause for the procedural default and actual prejudice resulting from the alleged violation of federal law; or (2) if the court's failure to consider the claim will result in a fundamental miscarriage of justice. *See McCall,* 114 F.3d at 758 (citing *Coleman,* 501 U.S. at 750). To establish cause for the default, a petitioner generally must "show that some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule." *Murray v. Carrier*, 477 U.S. 478, 488 (1986). To establish prejudice, the petitioner "must show that the errors of which he complains 'worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions.'" *Ivy v. Caspari*, 173 F.3d 1136, 1141 (8th Cir. 1999) (quoting *United States v. Frady*, 456 U.S. 152, 170 (1982)) (emphasis in *Ivy* omitted). A court need not consider prejudice unless the petitioner demonstrates cause. *McCall,* 114 F.3d at 758. The second exception—miscarriage of justice—is available only when the petitioner establishes that a constitutional violation likely caused the conviction of an innocent person. *Id.* (quoting *Brownlow v. Groose*, 66 F.3d 997, 999 (8th Cir. 1995)). If neither exception applies, the procedural default cannot be excused, and the court should deny the petition without reaching the merits of the claims. *See Carney v. Fabian,* 441 F.

Supp. 2d 1014, 1029 (D. Minn. 2006).

### B.) Motion to Dismiss

Applying these principles to the present case, the Court finds that each of Kindred's claims for habeas relief has been procedurally defaulted. Under Minnesota state law, an appellant in a criminal conviction has one opportunity to raise grounds for reversal on direct appeal. *State v. Knaffla*, 243 N.W.2d 737, 741 (Minn. 1976). If an appellant fails to raise a known ground for reversal, it "will not be considered upon a subsequent petition for postconviction relief." *Id.* Additionally, when the *Knaffla* rule would bar an individual from raising his claims in state court because he did not raise them previously on direct appeal, those claims are procedurally defaulted in federal court. *Buckingham v. Symmes*, 11-cv-2489 (PJS/SER), 2012 WL 3611893, at *2 (D. Minn. Aug. 21, 2012) (citing *McCall*, 114 F.3d at 757–58). However, the Minnesota Supreme Court has carved out two limited exceptions to the *Knaffla* rule: a party may re-raise an issue on appeal if "(1) the claim is novel or (2) the interests of fairness and justice warrant relief." *Andersen v. State*, 830 N.W.2d 1, 8 (Minn. 2013). Here, Kindred has procedurally defaulted on each of his claims, either by failing to raise it on direct appeal or by failing to raise it in his petition for review to the Minnesota Supreme Court.

### 1. Significant Relationship by Blood, Marriage or Adoption

Kindred's first ground for relief is that his right to due process was violated when he was convicted notwithstanding that the State failed to prove he had a significant relationship with the victims, an essential element of the crime for which he was convicted. (Pet. at 6.); *see also* Minn. Stat. § 609.342, subd. 1(h)(iii). More specifically, Kindred argues that the

8

State offered no evidence that he was related by blood, marriage or adoption to the victims and that absent such a familial relationship, the State could not prove he had a significant relationship with the victims. (Pet. at 6.) The State agrees that it never attempted to show that Kindred had a formal familial relationship to the victims, but points out that doing so would have been irrelevant; the State satisfied the statutory requirement for a significant relationship to the victims on different grounds, *i.e.* that he resided with the victims. In any event, the State argues, this ground for relief should be dismissed because it has been procedurally defaulted. (Resp't's Mem. Supp. Mot. Dismiss at 12-13.)

The Court agrees. While Kindred argued on direct appeal that the State failed to prove he resided with the victims, Kindred raised no issue on direct appeal regarding the lack of evidence of his formal familial relationship to the victims, let alone argued that his conviction in the absence of such evidence violated his due process rights under the U.S. Constitution. (Resp't's App. to Mem. Supp. at 5-24.) The state courts, then, did not have the opportunity to "rule on the factual and theoretical substance of his claim" which means the claim has not been exhausted. *See Ashker*, 5 F.3d at 1179. Additionally, because Minnesota law provides only one opportunity for direct appeal, Kindred is procedurally barred from raising this claim to the state courts. *Knaffla,* 243 N.W.2d 737 (Minn. 1976). Neither *Knaffla* exception would apply to this claim. Therefore, because Kindred never raised it to the state courts and is not able to do so now, the Court finds that the claim has been procedurally defaulted.

Finally, the Court finds that Kindred's claim does not fit within an exception to procedural default rule. Here, Kindred offers no explanation for why his procedural default

9

occurred. Additionally, the Court finds no factors that caution against dismissal or raise the possibility of a miscarriage of justice. Accordingly, the Court recommends dismissing with prejudice the claims in Ground One.

### 2. Significant Relationship Where the Actor Resides Intermittently or Regularly in the Same Dwelling as the Complainant

In his second ground for relief, Kindred again argues that the State failed to prove he had a significant relationship with the victims, but this time for a different reason—the State did not show that he "resided" with the victims. (Pet. at 6.) Under Minn. Stat. § 609.341, subd. 15(3), a person has a significant relationship if he "jointly resides intermittently or regularly in the same dwelling as the complainant." Here, Kindred argues that the victims testified that they "only visited sometimes" and that when they did occasionally stay overnight, they only stayed "one night at a time." (Pet. at 8.) According to Kindred, these infrequent visits did not occur "intermittently or regularly" as required by the statutory definition of significant relationship. On that basis, the conviction should be overturned because the State failed to meet an essential element of the crime.

Respondent again contends that this claim has been procedurally defaulted, but concedes that this claim presents a closer call. (Resp't's Mem. Supp. Mot. Dismiss at 12–13.) According to Respondent, Kindred made a slightly different argument on direct appeal regarding the sufficiency of evidence showing that he resided with the victims. More specifically, Kindred principally relied upon *State v. Sebasky,* 547 N.W.2d 93 (Minn. App. 1996) to argue that the State failed to meet its burden in establishing that Kindred resided with the victims. (Resp't's Mem. Supp. Mot. Dismiss at 12–13; *see also* Resp't's

10

App. to Mem. Supp. at 13–14); *see also*.  In that case, the court relied upon evidence that the victims left personal items at the defendant's residence and did not return home during their stays in concluding the State had proven the victims "resided intermittently or regularly" with the defendant.  Kindred argued on appeal that since the State offered no evidence in his case that the victims left personal items at his home, it did not satisfy the state law standard under *Sebasky* for what constitutes residing "intermittently or regularly" under Minn. Stat. § 609.341, subd. 15(3).  But, Respondent points out, the claim Kindred seeks to assert here is that his conviction in the absence of such evidence violated his federal constitutional right to due process, a claim Kindred did not raise in his state court appeals and that he is now barred from attempting to raise to the state courts in the future.

   Based on its detailed review of Kindred's arguments in his direct appeal as well as the claims he raised in his habeas petition, the Court finds that Kindred's due process claim in Ground Two has also been procedurally defaulted.  It is true that, by invoking state precedent which turns on "a pertinent federal constitutional issue," a petitioner may raise a federal constitutional claim to state courts sufficient to exhaust it for the purposes of a habeas petition.  *McCall*, 114 F.3d at 757.  But *Sebasky*, the case upon which Kindred relied in his state court appeal, did not turn on federal constitutional issues.  Rather, in *Sebasky*, the Minnesota Court of Appeals interpreted Minn. Stat. § 609.341, subd. 15(3) to discern the meaning of "residing intermittently or regularly" and, in so doing, assessed whether the facts proven by the State met that state law standard.  Kindred, in turn, argued that under *Sebasky,* the requirements of Minn. Stat. § 609.341,

subd. 15(3) could not be met without evidence that the victims had left personal effects at his residence. The Minnesota Court of Appeals, once again interpreting the statute, concluded that such evidence was not necessary to meet the statutory requirements for a significant relationship based on residence. Assessing sufficiency of the evidence under the Fourteenth Amendment's Due Process Clause, as Kindred would have the Court do in his habeas petition, involves a different analysis. *Jackson v. Virginia*, 443 U.S. 307, 99 (1979) (holding that Due Process is satisfied if "record evidence could reasonably support a finding of guilt beyond a reasonable doubt"). Kindred's direct appeal did not raise this federal constitutional claim, and therefore, the Court concludes Kindred did not exhaust his due process argument before the state courts. Further, because he did not raise a due process argument on his direct appeal, the Court determines that the argument has been waived and cannot be exhausted. Therefore, the Court finds that the claim in Ground Two has been procedurally defaulted.[5]

Moreover, Ground Two of Kindred's petition does not meet an exception to the *Knaffla* rule or the procedural default rule. First, no special factors indicate that Kindred's claims involve a novel legal theory or that the procedural bar would raise particular concern for fairness and justice. Second, Kindred does not show cause for why the

---

[5] The Eighth Circuit has noted that "[m]ere similarity between the state law claims and the federal habeas claims is insufficient: 'If state courts are to be given the opportunity to correct alleged violations of prisoners' federal rights, they must surely be alerted to the fact that the prisoners are asserting claims under the United States Constitution.'" *McCall*, 114 F.3d at 757 (quoting *Duncan v. Henry,* 513 U.S. 364, 365-66 (1995). In *McCall,* the court found petitioner's habeas claims to be procedurally barred where he argued that the state court had misinterpreted state law but did not explicitly challenge the state court decision on federal constitutional grounds.

procedural default rule should be set aside in his case.

Because the claims in Ground Two are procedurally defaulted and no exception applies, the Court would recommend that Ground Two be dismissed with prejudice for this reason alone. However, even if Kindred had exhausted this claim before the state court on direct appeal, the Court would recommend Ground Two be dismissed on substantive grounds. In Ground Two, Kindred essentially argues that the state supplied insufficient evidence to prove that he had a "significant relationship" with the victims, which is an essential element of the crime for which he was convicted. Due process requires that no person be convicted of a crime "except upon sufficient proof—defined as evidence necessary to convince a trier of fact beyond a reasonable doubt of the existence of every element of the offense." *Jackson v. Virginia*, 443 U.S. 307, 316 (1979). A writ of habeas corpus may issue from a federal court if a conviction was "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2).

When reviewing the sufficiency of the evidence for conviction, courts must view the evidence in the light most favorable to the prosecution. *Jackson*, 443 U.S. 307, 319 (1979). Evidence is sufficient to support a conviction if "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id*. Thus, a reviewing court may set aside a jury's conviction for lack of evidence only if no reasonable person could have agreed with the jury's decision. *Cavazos v. Smith*, 565 U.S. 1, 2 (2011). This is true even if the federal court disagrees with the state court outcome; the federal court may not substitute its judgment for that of the jury. *Id*.

Based on its review of the record, the Court finds that the state supplied sufficient evidence to meet the "significant relationship" element of first-degree criminal sexual conduct under Minn. Stat. § 609.342, subd. 1(h)(iii). Both victims testified at trial. There was evidence that the victims regularly spent time with Kindred, that he would babysit them while their mother was working, that they referred to him as "Grandpa," and that they occasionally stayed overnight at his house. (Resp't's App. to Mem. Supp. at 9–11.) Kindred does not argue in his habeas petition that there was insufficient evidence to convict him of having had sexual contact with the girls, nor does he appear to dispute the facts to which the victims testified regarding his relationship with them, including that they would occasionally stay over at his home. The Court of Appeals, called upon to interpret Minn. Stat. § 609.341, subd. 15, held that the kind of occasional overnight stays to which the victims testified were within its scope. Accordingly, the jury's determination, based on these facts, that Kindred had a significant relationship with the victims because he "jointly reside[d] intermittently or regularly in the same dwelling" with them was not "objectively unreasonable" or one that "no rational trier of fact could have agreed with." *Cavazos*, 565 U.S. at 2. Therefore, if Ground Two is not procedurally defaulted, the Court recommends denying Ground Two on substantive grounds.

### 3. Trial Court Decision to Re-play Video of Victim Interview

In his third ground for relief, Kindred argues that the trial court erred in replaying the video recording of the victim's interview with the Midwest Children's Resource Center. (Pet. at 9.) In making this claim, Kindred re-alleges a ground for relief he asserted before the Minnesota Court of Appeals, namely that the trial court failed to

14

consider whether Kindred would be unduly prejudiced by the trial court playing the video of the interview to the jury.  (Resp't's App. to Mem. Supp. at 19–24.)  According to Kindred, replaying the video gave unwarranted prominence to evidence supporting the State's theory of the case, and thus the trial court abused its discretion in allowing it to be played.  (Resp't's App. to Mem. Supp. at 21.)  Respondent, on the other hand, argues that the claims in Ground Three are procedurally defaulted because Kindred did not raise them to the Minnesota Supreme Court in his petition for review.  (Resp't's Mem. Supp. Mot. Dismiss at 14.)

   The Court agrees that the claim in Ground Three has been procedurally defaulted. A claim is procedurally defaulted when a habeas petitioner fails to exhaust it, and state courts can no longer review the claim due to a procedural bar. *Coleman,* 501 U.S. at 749–50.  To exhaust a claim, a petitioner must raise it before the state's highest court to allow it to rule on the substance of the claim.  *Ashker*, 5 F.3d at 1179.  Here, although Kindred vigorously argued before the Minnesota Court of Appeals that the trial court erred when replaying the video, Kindred did not raise the issue to the Minnesota Supreme Court in his petition for review.  (App. Resp't's Mem. Supp. at 75-83.)  Further, Kindred is procedurally barred from re-raising the issue before the Minnesota Supreme Court. *Knaffla*, 243 N.W.2d at 741; *see also,* Minn. R. Crim. P. 29.04 subd. 2 ("A party petitioning for review to the Supreme Court from the Court of Appeals must serve and file the petition for review within 30 days after the Court of Appeals files its decision"). Neither *Knaffla* exception would apply here, and Kindred has shown no cause why an exception to the procedural default rule should be made in his case.  Therefore, because

15

the claim in Ground Three was not exhausted and cannot now be raised before the state courts, the Court finds it is procedurally defaulted and recommends that Ground Three be dismissed with prejudice.

### 4. Inadequate Physical Examinations of the Victims

Kindred argues in Ground Four of his habeas petition that he was denied due process because the physical examination of the victims was inadequate. (Pet. at 11.) Respondent argues that this claim was never raised by Kindred in his direct appeal and therefore is procedurally defaulted. (Resp't's Mem. Supp. Mot. Dismiss at 15.) Kindred concedes that the claim was never raised on direct appeal, but appears to argue the argument was not raised because his public defender conspired with the state courts to prevent it from being preserved for review by the federal court in this habeas petition. He cites no factual foundation for this claim whatsoever. (Pet. at 11.) The Court finds Kindred's claim regarding his public defender's collusion with the state court system to be entirely conclusory and without basis in fact. Accordingly, because the claim in Ground Four was not raised to the state courts and cannot be raised now due to the *Knaffla* procedural bar, and Kindred offers no credible basis for why his claim in Ground Four warrants an exception to the procedural default rule, the Court finds that it has been procedurally defaulted and recommends that it be dismissed with prejudice.

### 5. Various Evidentiary Shortcomings at Trial

Lastly, Kindred asserts in Ground Five of his petition that he is entitled to habeas relief because he was denied due process based on the following: (1) no one searched his home for pornographic movies alleged to have been there; (2) the State did not search his

cell phone records to corroborate claims of sexually explicit text messages between him and the victims; (3) the State did not search his computer or obtain his DNA; (4) the State did not obtain school records to corroborate assertions that the victim was often late to school because of morning visits to Kindred's home; and (5) the trial court gave him insufficient time to find a new lawyer after he dismissed his first one.  Again, Respondent argues the claims raised by Kindred in Ground Five are procedurally defaulted because they were never raised in his direct appeal.  (Resp't's Mem. Supp. Mot. Dismiss at 16.) Kindred acknowledges these claims were not raised in his direct appeal, and provides no reason for why they should nevertheless be considered by this Court.  (Pet. at 11.)

The Court finds that Kindred did not exhaust the claims raised in Ground Five on his direct appeal and that he is barred from raising them now due to the *Knaffla* procedural bar. No special factors in the record indicate that Kindred's claims in Ground Five meet an exception to the *Knaffla* rule. Kindred's general protestations regarding the evidentiary shortcomings of the trial are not novel. Additionally, the records provides no indicia that the interests of fairness and justice warrant relief from the *Knaffla* rule. Therefore, the Court finds the claims to be procedurally barred.  Lastly, the Court finds the claims raised in Ground Five of Kindred's habeas petition do not fit within the limited circumstances where an otherwise procedurally defaulted claim should be heard by a federal court. Kindred provides no cause for why he failed to exhaust these claims, nor is there any reason to conclude that forgoing review of these claims will result in a fundamental miscarriage of justice. Even though Kindred professes to have suffered an injustice from certain evidence not being presented at trial, his argument mischaracterizes

17

the State's role in criminal discovery. While the State is required to turn over exculpatory evidence in its possession, it is not duty-bound to actively seek out evidence that might potentially be favorable to the defendant. *See Strickland v. Washington*, 466 U.S. 668, 691 (1984) (finding that defense counsel, but not prosecutor, has "a duty to make reasonable investigations"). In other words, the State did not act improperly by failing to uncover evidence that might potentially have been favorable to Kindred, and the circumstances raised by Ground Five do not raise concerns regarding fairness and justice in denying federal court review. Therefore, the Court recommends dismissing the claims in Ground Five with prejudice.

### III.   Certificate of Appealability

Before appealing a final ruling on a federal habeas petition, a state prisoner must be granted a certificate of appealability ("COA"). 28 U.S.C. § 2253(c)(1)(A); Fed. R. App. P. 22(b)(1). The Court cannot grant a certificate unless "the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). The applicant must show that the issues to be raised on appeal are "debatable among reasonable jurists," that different courts "could resolve the issues differently," or that the issues otherwise "deserve further proceedings." *Flieger v. Delo*, 16 F.3d 878, 882–83 (8th Cir. 1994).

The Court finds it unlikely that any other court, including the Eighth Circuit Court of Appeals, would decide Kindred's claims any differently than recommended here. Kindred has not identified, and the Court cannot independently discern, anything novel, noteworthy, or worrisome about this case that warrants appellate review. The Court therefore recommends that Kindred not be granted a COA in this matter.

### IV. Recommendation

Based on all the files, records, and proceedings herein, **IT IS HEREBY RECOMMENDED** that:

1. Respondent Jeff Titus's Motion to Dismiss [Doc. No. 6] be **GRANTED**;

2. Petitioner Jacoby Kindred's Petition under 28 U.S.C. § 2254 for a Writ of Habeas Corpus [Doc. No. 1] be **DISMISSED**;

3. A certificate of appealability **NOT BE GRANTED**; and

4. **JUDGMENT BE ENTERED ACCORDINGLY**.

Dated: December 27, 2017       s/ *Hildy Bowbeer*
                              HILDY BOWBEER
                              United States Magistrate Judge

### NOTICE

**Filing Objections:** This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals. Under Local Rule 72.2(b)(1), a party may file and serve specific written objections to a magistrate judge's findings and recommendations within fourteen days after being served with a copy of the Report and Recommendation. A party may respond to the objections within fourteen days after being served with a copy of the objections. D. Minn. LR 72.2(b)(2). All objections and responses must comply with the word or line limits set forth in LR 72.2(c)(1).